THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES GLASS, Defendant-Appellant.

First District (1st Division)   No. 83—1820

Opinion filed November 13, 1984.

Alan D. Goldberg, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Frank Zelezinski, and Karyn Stratton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

After a jury trial, defendant, Charles Glass, was found guilty of the murder of Howard Jackson and sentenced to 20 years. On appeal, defendant raises the following issues: (1) whether the trial court erred in failing to clarify the instructions given the jury; (2) whether the instructions given to the jury accurately stated the law to sustain a charge of murder; and (3) whether the defendant was rendered ineffective assistance of counsel.

The record discloses that the victim, Howard Jackson, was shot to death on January 30, 1983. Jackson resided on the second floor of a two-flat apartment building located at 6921 South Paulina in Chicago along with his girlfriend, a woman named Darlene. The defendant, Charles Glass, resided in the first-floor apartment with his common law wife, Dorothy Gregory, who owned the building. At the time of his death, the victim was 26 years old, weighed 303 pounds and was 5 feet 11 inches tall. The defendant was 57 years of age and weighed 135 pounds.

According to defendant, he had known Jackson for approximately one year and first met him when Jackson moved into the upstairs

apartment. During this period of time, there had been several occasions when defendant would arrive home and find Jackson, in a drunken condition, in his apartment. The defendant would ask him to leave, and Jackson would refuse. Arguments would ensue, and eventually Jackson would depart.

On one particular occasion, approximately three weeks prior to January 30, 1983, defendant came home, found Jackson in his apartment and asked him to leave. Although defendant reiterated his request eight or 10 times, Jackson repeatedly refused. Defendant then called the police, who forcibly removed Jackson and took him into custody.

On the evening of January 30, 1983, defendant arrived at his apartment and once again found Jackson in his apartment, sitting on the couch, next to defendant's common law wife, Dorothy Gregory. Defendant repeatedly asked Jackson to leave, but he refused and the two engaged in a heated exchange of words. Jackson put his hand in his back pocket and moved towards defendant. Defendant then shot Jackson three times.

At the close of the trial, the jury received a series of instructions which included instructions on murder and voluntary manslaughter. After four hours of deliberations, the jury sent a note to the trial judge inquiring whether it was necessary to return verdicts on both the murder and voluntary manslaughter charges. The judge responded by directing the jury to reach their verdict on the basis of the instructions already received. A few minutes later, the jury returned a verdict of guilty of murder, but returned the verdict forms on manslaughter unsigned.

Defendant initially contends that the trial court's refusal to further instruct the jury was reversible error, since the inquiry regarding whether verdicts must be returned on each of the charges was a question which the court had a duty to clarify. We find that the jury was adequately instructed. It is a general rule that additional instructions may be given in a criminal case after the jury has retired, provided that the State, the defendant, and his counsel are present. (*People v. Kucala* (1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622.) This rule, however, does not require the judge to issue additional instructions in all cases, especially if the trial judge determines that further instructions would serve no useful purpose. (*People v. Jones* (1976), 40 Ill. App. 3d 771, 353 N.E.2d 79.) In considering the adequacy of instructions, a reviewing court must take all of the instructions as a unit to ascertain whether they fully and fairly cover the law. *People v. Mitchell* (1979), 78 Ill. App. 3d 458, 397 N.E.2d 156.

■ In the case at bar, the jury was given instructions which extensively detailed the elements and definition of murder, voluntary manslaughter, justifiable use of force and reasonable belief. The instructions also outlined the State's burden of proof for both murder and voluntary manslaughter. (See Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 1.01, 1.02, 1.03, 2.01, 2.02, 2.03, 3.02, 3.06-3.07, 3.10, 3.11, 7.01, 7.02 and 24-25.06A, 7.05, 7.06 and 24-25.06A, 24-25.06, 4.13 and 26.01 (2d ed. 1981).) The jury was fully and properly instructed on the law as it related to the instant set of facts. The instructions were clear and in common language which the jury could understand. Under these circumstances, we find that the court properly exercised its discretion in not answering the jury's question or giving additional instructions. (*People v. Vega* (1982), 107 Ill. App. 3d 289, 294, 437 N.E.2d 919, 923; *People v. Charles* (1977), 46 Ill. App. 3d 485, 489, 360 N.E.2d 1214, 1217; *People v. Jones* (1976), 40 Ill. App. 3d 771, 775, 353 N.E.2d 79, 82.) Any response to the jury's inquiry may have required a colloquy between the court and the jury, a further explanation of the facts, and perhaps an expression of the trial court's opinion on the evidence. See *People v. Tostado* (1981), 92 Ill. App. 3d 837, 839, 416 N.E.2d 353, 355.

Defendant further contends that it was plain error for the murder issue instructions given to the jury to omit the element that the jury find the defendant did not believe that his actions were justified. Defendant relies on *People v. Stuller* (1979), 71 Ill. App. 3d 118, 389 N.E.2d 593, and *People v. Hoffer* (1984), 122 Ill. App. 3d 13, 460 N.E.2d 824. In *Stuller*, the court found this element essential because the purpose of including the element "is to make the jury aware of the distinction between the crimes of murder and manslaughter." (*People v. Stuller* (1979), 71 Ill. App. 3d 118, 122, 389 N.E.2d 593, 595.) The court held this omission to be plain error because the element cited was a required part of the IPI murder instructions at the time of the trial. (See IPI Criminal No. 27.01 (1st ed. 1968).) However, that element has been removed from the current set of murder issue instructions contained in the second edition of IPI Criminal. (See IPI Criminal No. 27.01 (2d ed. 1981).) In *Hoffer*, the jury was instructed on murder, voluntary manslaughter and involuntary manslaughter. In addition, the jury was instructed that where the defendant has intentionally or knowingly killed an individual, but acts with an unreasonable belief that the killing was justified, the offense committed is voluntary manslaughter, rather than murder. The jury returned guilty verdicts on all three charges. The appellate court reversed, holding that the verdicts were legally inconsistent, as they

demonstrated that the jury was confused as to whether defendant believed that his conduct was justified or not. *Hoffer*, however, does not hold that the element that the jury find the defendant did not believe that his actions were justified must be included in a murder instruction.

■ In criminal cases, where Illinois Pattern Jury Instructions contain an applicable instruction, giving due consideration to the facts and governing law, the IPI instruction is to be used, unless the court determines that it does not accurately state the law. (87 Ill. 2d R. 451(a); *People v. Mitchell* (1979), 78 Ill. App. 3d 458, 397 N.E.2d 156.) Here, the jury received the IPI criminal pattern instructions on both murder and voluntary manslaughter. Although the current murder issue instruction omits the element of whether the defendant actually, but reasonably, believed that circumstances existed which justified the use of deadly force, the voluntary manslaughter instructions given to the jury did include this element. If the jury believed defendant was justified in using deadly force, it could have returned a verdict of guilty of manslaughter and have left the murder verdict forms unsigned. Therefore, we cannot say that the omission of this element from the murder issue instruction gave rise to plain error.

Moreover, defense counsel did not object to the instructions that were given, nor did he tender any alternate instructions. The failure to object at trial to an asserted error in jury instructions waives the question, and no party may raise on appeal the failure to give an instruction unless he tendered it at trial. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) Thus, defendant has waived this issue on appeal.

Finally, defendant contends that he received ineffective assistance of counsel when his attorney delivered a rambling, ineffective and confusing closing argument. The State responds that, under the totality of the circumstances, defendant received adequate assistance of counsel and his conviction should be affirmed. Defendant cites *Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052, where the United States Supreme Court promulgated a new standard for considering claims of ineffective assistance of counsel. That standard is that "the defendant must show that counsel's representation fell below an objective standard of reasonableness," and that there is a "reasonable probability" that, but for counsel's errors, the result of the proceeding would have been different. The court defined a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." 466 U.S. ___, ___, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2069.

Our Illinois Supreme Court has adopted a similar standard in *People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217. In analyzing a defense counsel's trial performance, we must examine the record as a whole, rather than focusing on an isolated incident. (*People v. Martin* (1983), 122 Ill. App. 3d 486, 445 N.E.2d 795.) Appellate review will not extend to those areas of representation which involve the exercise of judgment, trial tactics and strategy. (*People v. Gallardo* (1983), 112 Ill. App. 3d 764, 445 N.E.2d 1213.) In view of defense counsel's overall competent performance, we cannot conclude that any inadequacy in his closing argument rendered defendant ineffective assistance of counsel. We note that counsel did an able job in giving a very detailed opening statement and in extensively cross-examining the State's witnesses. We therefore cannot say that but for the alleged rambling closing argument of defense counsel, the outcome of the defendant's trial would have been different.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and McGLOON, J., concur.