THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANA KITTINGER, Defendant-Appellant.

Second District   No. 2—92—1383

Opinion filed May 6, 1994.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE PECCARELLI delivered the opinion of the court:

Defendant, Dana Kittinger, was convicted of one count of residential burglary (Ill. Rev. Stat. 1991, ch. 38, par. 19—3(a) (now 720 ILCS 5/19—3(a) (West 1992))) for entering the apartment of a former friend without authority in order to steal a TV and VCR. On appeal, defendant contends that the trial court committed reversible error by failing to answer a jury's question about the meaning of "without authority."

Barbara Powell testified that she had known defendant for four or five years. She and defendant had a relationship and then a

friendship. Powell lived on the second floor of an apartment building. In the summer of 1991, defendant was spending a lot of time at her apartment. Defendant would sometimes enter the apartment when she was not there to baby-sit her children. Powell would loan him her key on these occasions. Defendant also stored his TV and VCR in Powell's apartment. Powell testified that early in August 1991 she and defendant ended their friendship. Powell did give defendant permission to enter her apartment prior to the end of their friendship and she told her son not to return defendant's TV and VCR when she was not there. However, defendant went to Powell's apartment the day after the breakup when Powell was not there, and Powell's son let defendant in and gave him his TV and VCR. Powell did not remember the exact date that this occurred, but she estimated that it was between nine days and two weeks before August 19, when she started her paper route. She admitted that she was angry that defendant had taken his TV and VCR from her apartment without her permission.

Powell testified that on September 12, 1991, Powell owned a TV and VCR which she kept in her living room. At this time, the only person other than Powell living in Powell's apartment was her daughter Laura. At 6 a.m. on that morning, Powell left for work and took her daughter with her. Powell locked the door on her way out. Powell had not given anyone permission to enter her apartment or remove any items. Powell returned to her apartment during her break between 9:30 and 10 a.m. so that she could record something on her VCR. She noticed that the TV and VCR were missing, and she called the police.

James Kruger of the Carpentersville police department testified that at 10:06 a.m. on September 12, 1991, he went to Powell's residence to investigate a burglary. Kruger concluded that there was no sign of forced entry to the apartment. In addition, he observed an empty VCR box and a VCR remote control in the apartment.

Sandra Fox testified that on September 12, 1991, she was living in the apartment next door to Powell's with her eight-year-old daughter Terrie. Between 8 a.m. and 8:30 a.m. that morning, as she was leaving the apartment to take her daughter to school, she saw defendant leave Powell's apartment with a TV and put the TV into his car. She thought nothing of this at the time. Fox recognized defendant because she had seen him a few times in the apartment complex with Powell or Powell's children. Later that day she reported to Powell what she had seen that morning. Three days later Fox picked defendant out of a photographic lineup. On cross-examination Fox admitted that she did not remember the exact date that she saw defendant with the TV.

Terrie Fox also testified that on the morning of September 12, 1991, as she was leaving for school with her mother, she saw defendant walk out of Powell's apartment carrying a TV. Terrie also picked defendant out of a photographic lineup.

Dennis Johnson of the Carpentersville police department testified that on September 15, 1991, he presented the photographic lineup containing defendant's picture to Sandra and Terrie Fox and that they identified defendant as the man that they had seen on September 12, 1991, in the apartment building. The trial court instructed the jury as follows on the offense of burglary:

> "A person commits the offense of residential burglary when he knowingly and without authority enters the dwelling place of another with the intent to commit therein the offense of theft.
>
> To sustain the charge of residential burglary, the State must prove the following propositions:
>
> First: That the defendant knowingly entered the dwelling place of another; and
>
> Second: That the defendant did so without authority; and
>
> Third: That the defendant did so with the intent to commit the offense of theft." See Illinois Pattern Jury Instructions (IPI), Criminal, Nos. 14.13, 14.14 (3d ed. 1992).

During its deliberations the jury sent a note asking the age of Powell's son. The trial court returned the note with a statement that the jury was to rely on the evidence that it had heard. The jury subsequently sent a note which stated:

> "We are having a problem with the second proposition—'The defendant did so without authority.' Does 'without authority' apply only to Barbara Powell telling Dana N. Kittinger he could not enter her dwelling; and would it apply to someone else letting Dana N. Kittinger into Barbara Powell's apt [sic]?"

The trial court had a discussion with both attorneys outside the presence of the jury in which it stated:

> "Gentlemen, I've reviewed the I.P.I. instructions. I don't see there's anything more we can say to the jury other than they must rely upon the instructions which they have already received."

Without an objection by either party, the trial court returned the note with the statement "You must rely on the instructions you have already received."

The jury found defendant guilty of residential burglary. Before the trial court dismissed the jury, it stated:

> "Ladies and gentlemen, thank you very much. Obviously you were working very hard back there. I can't tell you how difficult it is to sit here as a Judge, receive your questions and have to send you back the nonanswers that I'm required to send to you.

Obviously you were concerned about issues, and I wish that I could have done a better job of explaining them to you, but our hands are tied by the Illinois Pattern Jury Instructions. They are instructions which have been developed over the years and approved by the Supreme Court. They're developed by a group of Trial Judges and Appellate Court Judges and Supreme Court Judges and eventually adopted as Supreme Court Rules, and we are not allowed to go beyond those for the simple reason that the instructions are designed to be absolutely neutral, and the minute we start adding a word or changing something, we may give the impression that we're somehow attempting to give a position or influence you in some way."

On November 18, 1992, the trial court denied defendant's motion for a new trial and sentenced defendant to four years' imprisonment. Defendant filed a timely notice of appeal.

On appeal defendant argues that the trial court erred in refusing to answer the jury's question and provide a non-IPI jury instruction defining the term "without authority." According to defendant, this omission created a substantial likelihood that the jury convicted defendant even though it did not find all of the elements of residential burglary because it misunderstood the law.

Defendant reasons that although he did not testify or present evidence at trial, he had attempted to convince the jury through his attorney's arguments that Powell was angry with him and that she lied about the entire incident. Defendant had suggested that Powell lied about the date that he took his own belongings from her apartment and that no TV or VCR was ever stolen from Powell. He had pointed out to the jury that the only evidence corroborating Powell's accusation was the Foxes' testimony that they had seen defendant removing the TV from Powell's apartment. He had argued to the jury that he was actually removing his own belongings when the Foxes saw him with the TV. Furthermore, he had never returned to Powell's apartment to steal another TV or VCR.

Defendant now argues that the jury's questions, which were focused on the incident when defendant took his own belongings, reflected that at least some members of the jury had made the inferences that his attorney had suggested and believed his version of events. According to defendant, therefore, it was important for the jury to have understood that he was not acting "without authority" when he took his own belongings from Powell's apartment with the permission of Powell's son. The jury may have convicted him based on a misunderstanding that he committed residential burglary by taking his own belongings. Defendant argues that, by refusing to

answer the jury's question, the trial court "substantially deprived the defendant of his right to have the jury fully consider this defense."

█ We first note that defendant neither objected to the trial court's refusal to answer the jury's question nor submitted a proposed instruction on the definition of "without authority." A defendant generally waives defects in jury instructions by failing to object and tender an alternative instruction. (*People v. Gengler* (1993), 251 Ill. App. 3d 213, 219.) "The trial court is under no obligation to give instructions not requested by counsel or to rewrite instructions tendered by counsel, and no party may raise on appeal the failure to give an instruction unless he has tendered it." (*People v. Fetter* (1992), 227 Ill. App. 3d 1003, 1007.) This applies to errors in the initial jury instructions as well as instructions in response to the jury's questions. (*People v. Reid* (1990), 136 Ill. 2d 27, 38.) However, substantial defects in a jury instruction which undermine the fairness of the trial are not waived by defendant's failure to make a timely objection. (*People v. Pasch* (1992), 152 Ill. 2d 133, 171; 134 Ill. 2d R. 451(c).) Failing to instruct the jury in a way which allows it to consider a viable defense is the type of error which merits consideration on appeal even where defendant has failed to preserve the issue properly. (*People v. Lee* (1992), 229 Ill. App. 3d 254, 258-59.) We will therefore review the issue raised by defendant.

█ " 'Where a jury has raised an explicit question on a point of law arising from the facts over which there is doubt or confusion, the court should attempt to clarify the question in the minds of the jury members.' " (*Reid*, 136 Ill. 2d at 39, quoting *People v. Jackson* (1980), 89 Ill. App. 3d 461, 479; see also *People v. Kamide* (1993), 254 Ill. App. 3d 67, 72; *People v. Childs* (1992), 230 Ill. App. 3d 993, 998.) This is true even if the jury was initially given proper instructions. (*People v. Alcala* (1993), 248 Ill. App. 3d 411, 421; *People v. Flynn* (1988), 172 Ill. App. 3d 318, 323.) However, the trial court has the discretion to refuse to answer a jury's question if it finds that the instructions that the jury had already received are readily understandable, if further instruction would serve no useful purpose, if further instruction would confuse or mislead the jury, or if answering the jury's question would suggest to the jury the result it should reach. *Reid*, 136 Ill. 2d at 39 (and cases cited therein).

For example, we recently held in *People v. Lovelace* (1993), 251 Ill. App. 3d 607, that the trial court erred in failing to answer the jury's question regarding the definition of "knowingly." In *Lovelace*, defendant was convicted of aggravated battery. The jury had been instructed on the definition of "knowingly" with regard to conduct. That instruction read:

"A person acts knowingly with regard to the nature or attendant circumstances ofhis [sic] conduct when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists." (*Lovelace*, 251 Ill. App. 3d at 617, citing IPI Criminal 2d No. 5.01B (Supp. 1989).)

The trial court refused to instruct the jury on the definition of "knowingly" with regard to result. Such an instruction would have read:

"A person acts knowingly with regard to the result of his conduct when he is consciously aware that such result is practically certain to be caused by his conduct." (*Lovelace*, 251 Ill. App. 3d at 618.)

During its deliberations the jury sent a note to the court indicating that it was confused about the definition of "knowingly." The trial court responded to the jury that it should follow the instructions that it had been given. (*Lovelace*, 251 Ill. App. 3d at 618.) We determined that, because the State was required to prove both that defendant's conduct was performed knowingly and that defendant knew the likely result of his conduct, it was error for the court to refuse the second instruction. (*Lovelace*, 251 Ill. App. 3d at 618-19.) We further found that the error prejudiced defendant. We reasoned that the jury's question suggested that the jury may have found defendant guilty of the aggravated battery even if it had found that defendant did not know that his conduct was likely to cause great bodily harm. *Lovelace*, 251 Ill. App. 3d at 619.

Similarly, in *People v. Morris* (1980), 81 Ill. App. 3d 288, we determined that the trial court committed reversible error when it failed to answer the jury's question about the elements of burglary. The evidence established that defendant was apprehended near the site of the burglary in possession of stolen items. The jury was properly instructed on the offense of burglary. It was not instructed on accountability. During its deliberations, the jury asked, "If a person comes into possession of property obtained illegally by another can he be presumed guilty of burglary even though he, himself, may never have illegally entered the building or removed the property?" (*Morris*, 81 Ill. App. 3d at 290.) The trial court answered, "Not a proper question! You must decide the case on the instructions as given." (*Morris*, 81 Ill. App. 3d at 290.) We determined that it was reversible error for the trial court to refuse to answer the jury's question because the jury may have found defendant guilty of burglary even if it did not find that he had committed the element of entering the house. *Morris*, 81 Ill. App. 3d at 291.

In instructing the jury the trial court should use an IPI instruction where one is available which accurately states the law. (*People v. Gathings* (1981), 99 Ill. App. 3d 1135, 1138.) However, the trial court can and should give a non-IPI instruction where there is no IPI instruction which accurately states the law on a subject on which the jury should be instructed. (134 Ill. 2d R. 451(a).) The same rule applies to instructions that the trial court gives in response to a jury's question. *People v. Shannon* (1990), 206 Ill. App. 3d 310, 317.

The trial court's comments to the attorneys and to the jury suggest that the trial court believed that because there was no IPI instruction defining "without authority" it could not answer the jury's question. If this was in fact what the trial court believed then the trial court erred in failing to exercise its discretion. (See *People v. Blalock* (1993), 239 Ill. App. 3d 830, 842.) It is less clear whether defendant was actually entitled to such an instruction, although we need not resolve that question because we conclude that defendant was not prejudiced by the absence of such an instruction. Unless a trial court's error prejudiced the defendant, that error will be deemed harmless. *People v. Jamison* (1991), 207 Ill. App. 3d 565, 568.

We agree that the jury's questions do raise some concern over whether at least some members of the jury believed defendant's version of events in which defendant only made one trip to Powell's apartment when he retrieved his own TV and VCR. According to defendant, the trial court's failure to instruct the jury to the effect that Powell's son could have given defendant authority to enter the apartment allowed the jury to convict defendant of burglary even though it had not found each element of the offense. In particular, according to defendant the jury may have convicted defendant without finding that he entered Powell's apartment without authority because it believed, incorrectly, that the only person who could give defendant the authority to enter the apartment was Powell herself.

Even if Powell's son could have given defendant the authority to enter Powell's apartment, the trial court's failure to instruct the jury to that effect could not have prejudiced defendant. There was no evidence or suggestion whatsoever that defendant had the intent to commit a theft when he entered Powell's apartment to retrieve his own TV and VCR. Therefore, even if the jury believed that defendant was without the authority to enter Powell's apartment when he made this trip, it could not have convicted him of residential burglary based on that incident. In order for the jury to have convicted defendant of burglary, it must have found that Powell was credible and that defendant made a second trip to Powell's apartment to take Powell's TV and VCR.

We have no way of ascertaining the jury's thought process or of knowing why the jury was concerned about whether someone other than Powell could have authorized defendant's entry into the apartment. However, in order to conclude that the trial court's failure to instruct the jury on the meaning of "without authority" prejudiced defendant, we must speculate that (1) the jury believed defendant's version of events; (2) the jury incorrectly believed that Powell's son could not authorize defendant to enter Powell's apartment; and (3) that the jury did not understand that in order to commit a theft the defendant must take the property of *another*. (Ill. Rev. Stat 1989, ch. 38, par. 16—1(a) (now 720 ILCS 5/16—1(a) (West 1992)).) We will not speculate to that extent about a jury's reasons for reaching a particular verdict. (*Gengler*, 251 Ill. App. 3d at 223.) The record reflects that the trial court responded but answered the jury's question by advising the jury it should rely on the instructions it had already received. Despite the jury's concern about whether someone other than Powell could authorize defendant's entry into Powell's apartment, the jury found that defendant committed each and every element of the offense of residential burglary.

For the foregoing reasons we affirm the judgment of the circuit court of Kane County.

Affirmed.

WOODWARD and McLAREN, JJ., concur.